UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| TIFFANY RUSSELL, on behalf of RDR, a minor,<br><br>                    Plaintiff,<br><br>        v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration,<br><br>                    Defendant. | CASE NO. 3:16-cv-05188 JRC<br><br>ORDER ON PLAINTIFF'S COMPLAINT |

This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local Magistrate Judge Rule MJR 13 (*see also* Notice of Initial Assignment to a U.S. Magistrate Judge and Consent Form, Dkt. 5; Consent to Proceed Before a United States Magistrate Judge, Dkt. 7). This matter has been fully briefed (*see* Dkt. 14, 15, 16).

After considering and reviewing the record, the Court concludes that the ALJ committed harmful error by failing to note a diagnosis of anxiety disorder and its

ORDER ON PLAINTIFF'S COMPLAINT - 1

associated symptoms, and by failing to note other significant, probative evidence in the record.

In addition, the ALJ relied on the non-examining state agency psychologists when making his determinative findings, however these psychologists reviewed less than half of the record, and did not review the most recent assessments from RDR's teachers. The ALJ's finding that the teachers' assessments overall are consistent with the state agency psychologists' opinions is not a finding based on substantial evidence in the record as a whole, nor is the ALJ's finding regarding improvement with medication and counseling.

Therefore, this matter is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Acting Commissioner for further consideration consistent with this order.

## BACKGROUND

Plaintiff brings this action on behalf of her minor son, RDR, who was born in 2001 and was 8 years old on the alleged date of disability onset of September 1, 2009 (*see* AR. 173-81). According to the ALJ, RDR has at least the severe impairments of "Oppositional defiant disorder; attention deficit disorder; [and] learning disorder (20 CFR 416.924(c))" (AR. 14). At the time of the hearing, RDR was living in a four-plex with his mother and her boyfriend (AR. 37).

## PROCEDURAL HISTORY

RDR's application for Supplemental Security Income ("SSI") benefits pursuant to 42 U.S.C. § 1382(a) (Title XVI) of the Social Security Act was denied initially and following reconsideration (*see* AR. 74-81, 83-92). His requested hearing was held before

Administrative Law Judge Robert P. Kingsley ("the ALJ") on March 19, 2014 (*see* AR. 32-61). On June 18, 2014, the ALJ issued a written decision in which the ALJ concluded that RDR was not disabled pursuant to the Social Security Act (*see* AR. 8-31).

In plaintiff's Opening Brief, plaintiff raises the following issues: (1) Did the ALJ err by giving improper weight to the opinions of the state Agency doctors whose opinions were based upon a limited record; (2) Did the ALJ err by failing to mention or assess the level of severity of anxiety disorder at step 2 of the sequential evaluation process; (3) Did the ALJ err by improperly rejecting the evidence from the claimant's teachers who, except for the claimant's mother, see the claimant more than any other person and who are in the best position to assess the functional impact of RDR's medical conditions; (4) Did the ALJ err by improperly rejecting evidence from family members regarding the impact of RDR's mental impairments; and (5) Did the ALJ err by not properly applying SSR 09-1p to the evaluation of the claimant's impairments (*see* Dkt. 14, pp. 1-2).

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

//

//

//

# DISCUSSION

(1) **Did the ALJ err by giving improper weight to the opinions of the state Agency doctors whose opinions were based upon a limited record and did the ALJ err by failing to mention or assess the level of severity of anxiety disorder at step 2 of the sequential evaluation process?**

In considering claims of childhood disability, the administration follows a three-step sequential evaluation: (1) whether or not the child is working; (2) whether or not the child has a medically determinable "severe" impairment or combination of impairments; and (3) whether or not the child's impairment or combination of impairments meets, medically equals, or functionally equals the severity of an impairment in the listings. 20 C.F.R. § 416.924. The ALJ found that RDR has not worked and has at least the severe impairments of "Oppositional defiant disorder; attention deficit disorder; [and] learning disorder" (AR. 14). However, the ALJ failed to mention and assess the diagnosis of anxiety disorder NOS (mixed anxiety-depressive disorder) associated with persistent dysphoric or recurrent mood disorder lasting at least one month, difficulty concentrating, sleep disturbance, irritability and angry outbursts, worry and low self esteem or feelings of worthlessness (AR. 526-27).

A child's functional limitations are evaluated in the following six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for himself; and (6) health and physical well-being. 20 C.F.R. §§ 416.926a(b)(1)(i)-(vi). A medically determinable impairment or combination of impairments functionally equals a listed impairment if it results in "marked" limitations in two domains of functioning or an

"extreme" limitation in one domain. 20 C.F.R. § 416.926a(e)(2). A marked limitation exists if an impairment seriously interferes with the ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(2).

Plaintiff contends that the ALJ erred by relying on the opinions of the state agency doctors because Dr. Edward Beaty, PhD reviewed the file on December 6, 2011 when there were only five records in the "E" section and four records in the "F" section (AR. 81), and Dr. Grant Gilbert, PhD reviewed the file on May 29, 2012 when there were only eight records in the "E" section and six records in the "F" section (AR. 92), while there currently are 29 exhibits in the "E" section and 15 in the "F" section (Dkt. 14, p. 5). This argument is persuasive.

The ALJ rejected much of the evidence in the record. It appears that the only opinion evidence that was given significant weight is the opinion evidence from the non-examining state agency psychologists (*see* AR. 18). The ALJ indicated that he gave significant weight to Dr. Beaty's opinion in part because Dr. Beaty had the opportunity to review claimant's records before providing his opinion (*see id.*). The ALJ also gave significant weight to Dr. Beaty's opinion because it was affirmed by Dr. Gilbert, who had more records to review. However, as just noted, Dr. Gilbert also reviewed less than half of the "E" and "F" exhibits in the record.

Defendant contends that there is no error in the ALJ's reliance on these two opinions that were based on less than half of the most relevant records in part because "the ALJ considered these additional records . . . ." (Dkt. 15, p. 10). However, included in these additional records is a record from January 23, 2014, indicating that plaintiff was

ORDER ON PLAINTIFF'S COMPLAINT - 5

diagnosed with anxiety disorder NOS (mixed anxiety-depressive disorder) associated with persistent dysphoric or recurrent mood disorder lasting at least one month, difficulty concentrating, sleep disturbance, irritability and angry outbursts, worry and low self esteem or feelings of worthlessness (AR. 526-27, 622). The ALJ completely missed this diagnosis and its associated symptoms and failed to consider whether or not plaintiff's anxiety disorder was a severe impairment, and, further, he failed to consider the related symptoms when making findings regarding plaintiff's limitations in various functional domains. As the symptoms related to this impairment are opined to "cause clinically significant distress or impairment in social and academic functioning . . . ." it is likely that this impairment is severe (AR. 527). Therefore, defendant's argument that it was appropriate for the ALJ to reject much of the opinion evidence and rely on state agency psychologists who reviewed less than half of the relevant exhibits because the ALJ himself looked at the additional record is not persuasive. Defendant admits that the ALJ erred by failing to note this diagnosis, as defendant argues only that the error is harmless (Dkt. 15, p. 3-4). However, defendant's argument is not persuasive.

The Ninth Circuit has "recognized that harmless error principles apply in the Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (citing *Stout v. Commissioner*, *Social Security Administration*, 454 F.3d 1050, 1054 (9th Cir. 2006) (collecting cases)). Recently the Ninth Circuit reaffirmed the explanation in *Stout* that "ALJ errors in social security are harmless if they are 'inconsequential to the ultimate nondisability determination' and that 'a reviewing court cannot consider [an] error harmless unless it can confidently conclude that no reasonable ALJ, when fully

crediting the testimony, could have reached a different disability determination.'" *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. July 10, 2015) (citing *Stout,* 454 F.3d at 1055-56). The court further indicated that "the more serious the ALJ's error, the more difficult it should be to show the error was harmless." *Id.* at 792 F.3d 1170 (citing *Stout,* 454 F.3d at 1056; *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 750 (6th Cir. 2007)). The failure to mention or assess a medical diagnosis is a relatively serious error. In *Marsh,* even though "the district court gave persuasive reasons to determine harmlessness," the Ninth Circuit reversed and remanded for further administrative proceedings, noting that "the decision on disability rests with the ALJ and the Commissioner of the Social Security Administration in the first instance, not with a district court." *Id.* (citing 20 C.F.R. § 404.1527(d)(1)-(3)).

      Defendant also notes that the ALJ's review of these additional records includes a finding that RDR improved with medication and that the ALJ considered this improvement when assessing the relevant functional domains (*see* Dkt. 15, p. 10). Similarly, the ALJ indicated in part that he relied on the state agency psychologist's opinion because it was consistent with the objective medical evidence demonstrating that RDR's "prescribed medication has greatly improved his functional abilities and returned him to his baseline level of functioning" (AR. 18).

      Although the ALJ referenced an August, 2013 record from Dr. R. Barney Voegtlen, M.D. (AR. 17), the ALJ appears to have missed the fact that Dr. Voegtlen indicated in this treatment record that the medical evidence demonstrated that RDR's PSC [Pediatric Symptom Checklist] 17 score of 10 "for attention parameters [] is worse

than before . . . ." and opined that RDR may require additional medication (AR. 559). Instead, the ALJ, apparently in reliance on reports from RDR's mother, found that this record demonstrated that RDR's "attention span was fine . . . ." (AR. 17). As the ALJ gave "little weight" to the opinion of RDR's mother (AR. 19), it is unclear why regarding this particular treatment record the ALJ would credit her general statement over the indications from the doctor based on psychological testing. Instead, it appears that the ALJ missed this aspect of the record, as there is no comment about it. The fact that RDR's treating physician opined that RDR's attention difficulties were worse is significant and probative evidence that the ALJ should have discussed, especially since the ALJ made the opposite conclusion. The ALJ referenced only one note from RDR's school or medical record subsequent to this note from RDR's doctor regarding worsening attention.

Furthermore, other aspects of the record discussed in plaintiff's opening brief call in to question the ALJ's findings regarding RDR's functional abilities in the various domains (*see* Dkt. 14, pp. 7-13). For example, on September 24, 2012, RDR saw Dr. Voegtlen (*see* AR. 474-84). Included in Dr. Voegtlen's treatment record is a teacher assessment from Ms. Connie Holman (AR. 476-77). The ALJ does not mention this assessment. In this assessment, Ms. Holman opined that there are number of areas in which RDR demonstrates difficulties "very often," the highest rating possible (*see id*.). Included at this highest rating is her opinion that RDR very often has "difficulty sustaining attention to tasks or activities; does not follow through on instruction and fails to finish schoolwork - not due to oppositional behavior or failure to understand; avoids,

dislikes, or is reluctant to engage in tasks that require sustained mental effort; is easily distracted by extraneous stimuli; does not remain seated in classroom or in other situations in which remaining seated is expected; blurts out answers before questions have been completed; loses temper; [and] actively defies or refuses to comply with adults' requests or rules" (*id.*). Ms. Holmes also indicates that RDR has a "problematic" performance, the highest level of difficulty, in reading; following directions; mathematics; disrupting class; written expression; [and] assignment completion" (AR. 477).

Dr. Voegtlen saw RDR again on October 19, 2012 (AR. 471-70). He indicated that RDR's "school reports indicate maximal symptoms of inattentiveness and overactivity and mom says that he's had frequent suspensions for disruption" (AR. 471). According to this record, "Ms. Sweet, his sixth grade teacher, describes him as a rarely completing his written work and almost never completely and accurately" (AR. 472).

On January 31, 2014, Ms. Charlotte Sweet, RDR's math teacher, reported that RDR's difficulties continued. There are a number of activities with which Ms. Sweet opines that RDR has a "very serious problem," the highest level of difficulty, including refocusing to task when necessary; changing from one activity to another without being disruptive; [and] completing class/homework assignments" (AR. 290).

According to Ms. Toni Sugi, on February 5, 2014, RDR continued to have a serious problem with these activities, as well as other activities such as focusing long enough to finish assigned activity or task; completing work accurately without careless

mistakes; working without distracting self or others; and working at a reasonable pace/finishing on time (AR. 303).

On February 6, 2014, Ms. Georgina Coffin opined, among other things, that RDR had a very serious problem, the highest level of difficulty, with many of the same noted activities, including focusing long enough to finish assigned activity or task, which she noted occurred hourly; refocusing to task when necessary, which she noted occurred daily; carrying out multi-step instructions, which she noted occurred daily; completing class/homework assignments, which she noted occurred daily; completing work accurately without careless mistakes, which she noted occurred daily; working without distracting self or others, which she noted occurred daily; and working at reasonable pace/finishing on time, which she noted occurred daily (AR. 315). This is some of the most recent evidence in the record and does not indicate much improvement.

In addition to other notations from the record noted by plaintiff and not discussed here, these opinions that the Court has discussed reflect a large degree of consistency in the opinions of RDR's teachers regarding RDR's high level of difficulty in attending and completing tasks, as well as in other areas of difficulty. None of these reports discussed by the Court herein were reviewed by the state agency psychologists relied on by the ALJ for his ultimate findings and disability determination.

While the ALJ is not required to discuss every record submitted to him, he "may not reject 'significant probative evidence' without explanation." *Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995) (*quoting Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) (*quoting Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981))). The "ALJ's

written decision must state reasons for disregarding [such] evidence." *Flores, supra*, 49 F.3d at 571. The ALJ's finding that there are differences among the various teachers' opinions is not an explanation for disregarding these observations, many of which were completely consistent, as noted by the Court already. The Court concludes that the finding by the ALJ that the "overall weight of these observations is consistent with the ratings by the state agency's consultants" is not based on substantial evidence in the record as a whole (AR. 19).

Furthermore, although there is a note in the record that RDR was able to focus much better, these evaluations just discussed contradict the finding by the ALJ that the "recent educational record suggests his condition has improved with counseling and his prescribed medications" (AR. 17). In addition, as noted by plaintiff, when making this determination, the ALJ was unaware of RDR's diagnosis of anxiety disorder and the symptoms he was experiencing as a result of that disorder, such as persistent dysphoric or recurrent mood disorder lasting at least one month, difficulty concentrating, sleep disturbance, irritability and angry outbursts, worry and low self esteem or feelings of worthlessness (AR. 526-27, 622).

The Court cannot conclude with confidence that no reasonable ALJ, when crediting fully this diagnosis and the associated symptoms, could have reached different findings regarding RDR's functional equivalence domains, and hence could have reached a different ultimate disability determination. *Marsh*, 792 F.3d at 1173 (citing *Stout,* 454 F.3d at 1055-56). Therefore, the ALJ's error in failing to discuss this diagnosis and the related symptoms is not harmless error.

Furthermore, the ALJ's finding regarding RDR's improvement with counseling and medication, in light of the entire record for the relevant period of time, is not based on substantial evidence in the record as a whole.

Therefore, this matter must be reversed and remanded for further administrative proceedings.

(2) **Did the ALJ err by improperly rejecting the evidence from the claimant's teachers who, except for the claimant's mother, see the claimant more than any other person and who are in the best position to assess the functional impact of RDR's medical conditions?**

This argument by plaintiff already has been discussed, *see supra*, section 1. As noted, the state agency psychologists did not have the opportunity to review most of the evidence from RDR's teachers. In addition, the Court has concluded that the finding by the ALJ that the "overall weight of these [teachers'] observations is consistent with the ratings by the state agency's consultants" is not based on substantial evidence in the record as a whole, *see supra*, section 1 (*see also* AR. 19). This matter must be reversed and remanded for further evaluation.

(3) **Did the ALJ err by improperly rejecting evidence from family members regarding the impact of RDR's mental impairments?**

Because this matter must be reversed and remanded for further evaluation, and based on the record as a whole, the Court concludes that the ALJ should evaluate anew the evidence from family members regarding the impact of RDR's mental impairments. For example, although the ALJ rejected the statement from RDR's grandmother, finding that there was little evidence that the discussed behavior persisted to a chronic level, much of the information in the record discussed in plaintiff's opening brief, and not

discussed by the ALJ, as well as the assessments discussed, supports chronic difficulties in RDR's behavior. Although the ALJ found that she provided little information to support her statement that RDR does not listen and only does what he wants to do, there is a very large amount of information in the record supporting this opinion.

    (4)  **Did the ALJ err by not properly applying SSR 09-1p to the evaluation of the claimant's impairments**?

As noted, this matter must be reversed and remanded for further evaluation. Following remand of this matter, each of the functional equivalence domains should be evaluated anew.

## CONCLUSION

Based on the stated reasons and the relevant record, the Court **ORDERS** that this matter be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) to the Acting Commissioner for further consideration consistent with this order.

**JUDGMENT** should be for plaintiff and the case should be closed.

Dated this 2nd day of September, 2016.

                                                                                       J. Richard Creatura
                                                                                       United States Magistrate Judge